IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MARCIA RICHARDSON and JAMES RICHARDSON, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) 3:12-cv-01278 ) Judge Nixon ) Magistrate Judge Griffin |
| CONTEMPORARY SERVICES CORPORATION, | ) ) JURY DEMAND ) |
| Defendant. | ) ) |

## ORDER

Pending before the Court is Defendant Contemporary Services Corporation's Motion to Dismiss for Failure to State a Claim upon which Relief Can Be Granted ("Motion"). (Doc. No. 12.) For the reasons stated below, the Court **GRANTS** the Motion.

I. BACKGROUND

This case arises out of injuries allegedly suffered by Plaintiff Marcia Richardson ("Ms. Richardson") when she and her husband, James Richardson ("Mr. Richardson"), attended a Tennessee Titans game at LP stadium on December 11, 2011.

According to the Richardsons' Complaint, a security guard employed by Defendant Contemporary Services Corporation ("CSC") "intentionally or inadvertently stepped into" Ms. Richardson's path as she entered a stadium gate, causing her to fall. (Doc. No. 1 ¶¶ 7–12.) The Complaint alleges that, though "Mr. Richardson ran and tried to catch" his wife, he "was unable" to do so, and her "head bounced off the concrete." (*Id.* ¶ 12.) "People" began "stepping over" and around Ms. Richardson, and "Mr. Richardson protected her from further injury." (*Id.* ¶ 13.)

1

Meanwhile, the guard who allegedly "caused the fall never even looked at the Richardson's [sic] nor offered to help them as Ms. Richardson laid on the ground." (*Id.*)

The Complaint further alleges that

> [t]he Richardson's [sic] were finally offered an ambulance, but Mr. Richardson wanted to take [Ms. Richardson] to the hospital himself. Unable to walk, Ms. Richardson was placed in a golf cart and taken to their car in the parking lot. But, Mr. Richardson could not get Ms. Richardson into his auto, so they requested an ambulance which took her to Williamson Medical Center where she was treated for her injuries.

(*Id.* ¶ 14.) As a result of the fall, Ms. Richardson allegedly suffered physical and emotional injuries, while Mr. Richardson suffered a loss of consortium. (*Id.* ¶¶ 15–19, 32.)

Bringing suit in federal court based on diversity jurisdiction, the Richardsons have asserted six state-law claims against CSC. (*Id.* ¶¶ 20–32.) In one claim, they allege that a "special relationship" existed between CSC and Ms. Richardson, and that CSC failed in its resulting duty to render aid to her. (*Id.* ¶¶ 29–30.) On February 13, 2013, CSC filed the Motion to Dismiss at issue here (Doc. No. 12) and a Memorandum in Support (Doc. No. 12-1), seeking to dismiss the "failure to render aid" claim only. The Richardsons filed a Response opposing the Motion. (Doc. No. 16.)

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561 (2007).

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. To

2

establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action"; instead, she must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When ruling on a defendant's motion to dismiss, the court must "construe the complaint liberally in the plaintiffs' favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). The court must determine whether the plaintiff "is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). As a result, the court must allow "a well-pleaded complaint [to] proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556.

### III. ANALYSIS

In its Motion, CSC argues that the Richardsons have failed to state a claim for failure to render aid under Tennessee law, because—based on the facts alleged in the Complaint—it had no duty to render aid to Ms. Richardson. (Doc. No. 12 at 1.) Specifically, CSC argues no duty existed because Mr. Richardson attempted to come to his wife's aid and refused CSC's offer to secure an ambulance. (Doc. No. 12-1 at 2–3.) For their part, the Richardsons argue that CSC "had a duty to render aid as soon as their [sic] employee caused Ms. Richardson to fall" and that this duty "did not stop when Mr. Richardson reached her side." (Doc. No. 16 at 3.)

As a general matter under Tennessee law, a person seeking to recover damages caused by another's negligence must prove: "(1) a duty of care owed by the defendant to the plaintiff; (2) a

3

breach of that duty by the defendant; and (3) an injury to the plaintiff which was proximately caused by the defendant's breach of a duty." *Lindsey v. Miami Dev. Corp.*, 689 S.W.2d 856, 858 (Tenn. 1985).

Under the common law, a person generally owes no duty to render aid to another in peril, unless a special relationship between the parties exists that creates such a duty.[1] *Id.* at 859. Tennessee courts have recognized that a special relationship exists between businesses and customers on their premises, such that a business may owe a duty to render aid. *Kirksey v. Overton Pub, Inc.*, 804 S.W.2d 68, 78 (Tenn. Ct. App. 1990) (citing *Lindsey*, 689 S.W.2d at 859; Restatement (Second) of Torts § 314A). This special relationship between a business and its customers derives from the Restatement (Second) of Torts, which explains the duty to render aid as a landowner's duty "to give [invitees on its land] first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others." Restatement (Second) of Torts § 314A.

This duty is not without limits. It requires the business or landowner "to use reasonable care under the circumstances." *Lindsey*, 689 S.W.2d at 859; Restatement (Second) of Torts § 314A cmt. e. The Tennessee Supreme Court has noted that a defendant "'will seldom be required to do more than give such first aid as he reasonably can, and *take reasonable steps to turn the sick person over to a doctor or to those who will look after him until one can be*

---

[1] The Court notes that, in pleading a failure to render aid claim, the Richardsons specifically allege that CSC had a "special relationship" with Ms. Richardson that created a duty to render aid, which CSC breached. (Doc. No. 1 ¶¶ 29–30.) The Court understands this as distinct from a claim that a CSC employee created a risk of harm to Ms. Richardson, leading to CSC's duty to prevent further harm. *Compare* Restatement (Second) of Torts § 316A (1965) ("Special Relations Giving Rise to Duty to Aid or Protect") *with* Restatement (Second) of Torts § 322 ("Duty to Aid Another Harmed by Actor's Conduct").

4

*brought.'" Lindsey*, 689 S.W.2d at 859 (quoting Prosser and Keeton, Torts § 56 (5th ed. 1984)) (emphasis added).

In *Kirksey*, the state court of appeals reaffirmed this limitation on the duty to render aid by upholding jury instructions stating that a business "is not required to give any aid to one who is in the hands of apparently competent persons who have taken charge of him or whose friends are present and apparently in a position to give him all the necessary assistance." 804 S.W.2d at 78. The *Kirksey* court held such an instruction conformed with *Lindsey* and the Restatement, which includes an almost identical formulation about the duty's scope:

> [the defendant] will seldom be required to do more than give such first aid as he reasonably can, and *take reasonable steps to turn the sick man over . . . to those who will look after him* and see that medical assistance is obtained. *He is not required to give any aid to one who is in the hands of apparently competent persons who have taken charge of him*, or whose friends are present and apparently in a position to give him all necessary assistance.

Restatement (Second) of Torts § 314A cmt. f (emphasis added).

The court of appeals has made clear that this limitation is not a definition of "reasonable care," but goes to whether a duty exists. The court held in an unpublished decision that the duty to render aid does not include a duty to "seek immediate medical treatment" for an invitee, "if, when [the business and its employees] learned of his injury, they also learned that he was in the hands of persons who were apparently competent to give him appropriate assistance." *McCammon v. Gifford*, No. M2001-01357-COA-R3-CV, 2002 WL 732272, at *5 (Tenn. Ct. App. Apr. 26, 2002). In other words, a business is "not required to second guess" the decisions of those already rendering aid, including—as occurred in *McCammon*—their decision to drive to the hospital themselves, rather than call for an ambulance. *Id.*

In summary, it appears to this Court that Tennessee courts have recognized both an exception to the general rule that no duty exists to render aid and a limitation to the exception: A

business has a duty to take reasonable steps to seek medical aid for a customer it knows or should know is injured on its premises, but not if a competent person has already taken charge of the customer at the time the business learns of the injury.

The issue here, then, at the motion to dismiss stage is whether the Richardsons have alleged facts such that the Court can draw the reasonable inference that CSC's conduct falls within this rubric and CSC could plausibly be liable for failing to render aid. The Court finds that they have not.

As a basic matter, while the Richardsons make the bald assertion that a special relationship existed between Ms. Richardson and CSC, the Court finds they have not alleged any supporting facts that lay out the basis for this relationship. As to CSC, the Richardsons allege only that it "is a Foreign Corporation" based in California and that it employed the guard who allegedly tripped Ms. Richardson. (Doc. No. 1 ¶¶ 3, 8, 10, 12.) But, they have not alleged, for instance, that CSC owned the land on which Ms. Richardson injured herself, operated a business of which she was a customer, or—as is more likely here—acted as the agent of the landowner or business operator. Because case law explicitly limits a duty to render aid to specified "special relationships" based on premises liability and business-customer obligations, the Court has difficulty overlooking the Complaint's failure to make any factual allegations that would support the existence of a special relationship here.

Even if the Court were to infer a special relationship existed based on the facts in the Complaint, it finds the Richardsons have not alleged sufficient facts that CSC owed her a duty or that CSC failed in the duty. First, they have not alleged facts that lead to the inference that CSC knew or should have known that Ms. Richardson injured herself, as required to create a defendant's duty to render aid. They have alleged simply that a CSC guard intentionally or

inadvertently stepped into Ms. Richardson's path, and then "never even looked at the Richardson's [sic] nor offered to help them." The Complaint does not, however, allege facts that would suggest the guard saw or knew Ms. Richardson had fallen, or that he or she intentionally tripped Ms. Richardson, such that CSC should have known of her injury.

More starkly, the Richardsons' Complaint is devoid of any details about what happened between when Ms. Richardson fell and when someone offered to call an ambulance, and what actions CSC employees took or failed to take during that time. As to what happened after, the Complaint states succinctly that "[t]he Richardson's [sic] were . . . offered an ambulance"—an offer that Mr. Richardson chose to decline initially because he wanted to take his wife to the hospital himself—and that someone—presumably an employee at the stadium—then "placed [Ms. Richardson] in a golf cart" and took her to the Richardsons' car. When Mr. Richardson could not lift his wife into the car, the couple requested an ambulance. On these facts alone, it appears that one or more parties did render aid by offering to call an ambulance and assisting the couple to their car, though Mr. Richardson had taken charge of his wife's aid.

When did CSC learn of the injury and how did its employees respond, if at all? The Complaint offers no hint. Who initially offered the ambulance? Did the "offer" of an ambulance come soon after the fall or after a substantial length of time? When CSC learned of the injury, did it appear that Mr. Richardson had taken charge of obtaining medical assistance? How long after the fall were the Richardsons brought to their car? Who ultimately called for the ambulance? When did the ambulance call occur in relation to Ms. Richardson's fall and injury? As to the answers to any of these questions, the Complaint offers not a clue.

Without even the scarcest of these factual allegations, the Court cannot infer that CSC is liable for the misconduct alleged because, frankly—apart from a general recitation of the

7

elements of a failure to render aid claim—there is no misconduct alleged. *See Ashcroft*, 556 U.S. at 678 (a plaintiff cannot rely solely on "recitals of the elements of a cause of action"). Aside from the statements that the guard did not look at the Richardsons and that they were "finally" offered an ambulance, nowhere have the Richardsons alleged facts that support a conclusion that CSC acted too slowly or failed to act at all, once it learned of the injury. *See Madison v. Love*, No. 03A01-9903-CV-00069, 1999 WL 1068706 (Tenn. Ct. App. Nov. 24, 1999) (plaintiff's failure to render aid claim alleged defendants did not respond within a reasonable time when plaintiff collapsed in their nightclub), *vacated*, *Madison v. Love*, No. E2000-01692-COA-RM-CV, 2000 WL 1036362 (Tenn. Ct. App. July 28, 2000). The Court finds the facts alleged insufficient to state a claim for failure to render aid and, thus, **GRANTS** the Motion.

The Court notes that it grants this Motion without imposing any strict or heightened pleading requirements on plaintiffs bringing failure to render aid claims. This is simply the rare case in which the Court reviews a claim marred by an inexplicable paucity of factual allegations.

### IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** the Motion and **DISMISSES** the Richardsons' claim for failure to render aid.

It is so ORDERED.

Entered this the 2nd day of August, 2013.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT